Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| L&O CONSTRUCTION, INC.<br><br>Parte Recurrente<br><br>v.<br><br>SUPERINTENDENCIA DEL CAPITOLIO<br><br>Parte Recurrida<br><br><br>Tripoli Construction, Corp.<br>Licitador Agraciado | TA2026RA00231 | *Revisión de Decisión Administrativa procedente* de la Junta de Subastas de la Superintendencia del Capitolio<br><br>Subasta Pública SF-05-26<br><br>Sobre:<br>Mejoras de Infraestructura en el Complejo Antonio R. Barceló |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 9 de junio de 2026.

Comparece la parte recurrente, L & O Construction, Inc. (L&O o parte recurrente), y solicita que revoquemos la *Notificación de Adjudicación de Subasta Formal*[1] emitida el 11 de abril de 2026, notificada el 24 de abril de 2026, por la Junta de Subastas de la Superintendencia del Capitolio (la Junta o parte recurrida). En virtud de esta, la Junta descalificó a L&O Construction por incumplimiento sustancial no subsanable y adjudicó la *buena pro* de la subasta a Tripoli Construction, Corp. (Tripoli o licitador agraciado).

El 19 de mayo de 2026, la Superintendencia del Capitolio, presentó su *Alegato en Oposición al Recurso de Revisión*[2].

Evaluado el recurso, la oposición y los documentos que conforman el apéndice, a la luz del derecho aplicable, confirmamos la determinación recurrida.

---

[1] Véase Apéndice del recurso, anejo 2.
[2] Entrada Núm. 3 de SUMAC.

### I.     Trasfondo fáctico y procesal

El 30 de enero de 2026 la Junta de Subastas publicó el *Pliego de Subasta Formal SF-05-26 Mejoras de Infraestructura en el Complejo Antonio R. Barceló*[3]. El pliego establecía varios requisitos con los que tenían que cumplir los licitadores interesados. Entre estos, en la Parte I-Instrucciones Generales, acápite 10, el pliego establecía que no se admitirían modificaciones, cambios o correcciones a las ofertas presentadas, así como tampoco se podría presentar oferta sustituta o *posterior al acto de apertura*. Asimismo, en la Parte II-Ofertas Admisibles e Inadmisibles, inciso 8, disponía que todo licitador debía sostener y garantizar sus precios por un periodo de tiempo no menor a ciento veinte (120) días a partir de que presentara su oferta. En lo aquí pertinente, la Parte III-Condiciones Generales, el acápite 19 del pliego disponía lo siguiente en cuanto a las fianzas y seguros:

> 1.Fianza de licitación ("Bid Bond"): La fianza de licitación será un respaldo provisional que prestará el licitador con el propósito de asegurar que habrá de sostener su oferta durante todo el proceso de la subasta. **Para esta subasta se requiere una fianza de un (5 %) por ciento del total de la oferta.** *Toda oferta que se presente sin la fianza de licitación aquí dispuesta será rechazada.* Debe ser presentada mediante compañía de seguros autorizada a favor de la Superintendencia del Capitolio. La fianza de licitación se presentará en el mismo momento de presentar la oferta.

Luego de acaecidos los trámites procesales de rigor, el 5 de marzo de 2026, se llevó a cabo la entrega de propuestas por parte de los licitadores, entre otros, L&O y Tripoli[4]. Ese mismo día se llevó a cabo el acto de apertura de los sobres entregados para la verificación de documentos y cumplimiento de entrega de lo requerido por el pliego de subasta a cada licitador.

Al día siguiente de celebrarse el acto de apertura, L&O, *por iniciativa propia*, le cursó un correo electrónico a la Oficina de

---

[3] Ap. 3 pág. 1.
[4] Allied Contractors & Engineers, Corp., J & A Builders Group, Inc. (J&A), JN Contractors, Inc., Lotor Group, Corp. (Lotor), L & O Construction, MFS Construction, LLC y Tripoli Construction, Corp.

Subastas. En este informó que había un error en el *Bid Bond* que presentó originalmente, pues el mismo expresaba vigencia de 90 días, contrario al término de 120 días que exigía el pliego de subasta[5]. En el referido correo electrónico, adjuntó un *Bid Bond* con vigencia de 120 días.

Así las cosas, el 23 de marzo de 2026, el Sr. Miguel Miranda Pagán, Principal Oficial de Gestión, suscribió un documento titulado *Evaluación Técnica y Económica para la Subasta SF-05-26*. En dicha evaluación, el oficial consignó que el presupuesto obligado del proyecto era de $500,000.00. Además, expresó que L&O presentó la oferta global más económica y cercana al presupuesto y que Tripoli era la segunda oferta más competitiva[6].

El 25 de marzo de 2026, el Presidente Interino, Helcrían Martínez Martínez, cursó misivas a las aseguradoras de varios licitadores. En estas les requirió a los licitadores lo siguiente: a J&A, le requirió aclarar la fecha de fianza, y a Lotor y a Tripoli les requirió confirmar la validación de la fianza presentada, pues el documento presentado por estos era copia digital y no original[7]. La parte recurrente arguyó que el Presidente Interino no le cursó comunicación alguna a Triple-S, aseguradora de la parte recurrente, para dilucidar cualquier asunto en torno a su fianza.

Luego, el 7 de abril de 2026, la Coordinadora de Subasta y Custodia del Proceso emitió *Certificación del Proceso y Sometimiento a la Junta de Subastas*[8] en el que certificó que la Oficina de Subastas completó la fase de revisión administrativa de conformidad con la reglamentación vigente. Además, la Coordinadora detalló los hallazgos relevantes respecto a las propuestas de los licitadores. En

---

[5] Ap.11, págs. 1-2.
[6] Ap. 12, págs. 5-10.
[7] Véase, Ap. 13 al 18.
[8] Ap. 12.

lo aquí pertinente, esta consignó lo siguiente en cuanto a la recurrente:

> L&O Construction: **presentó fianza de licitación por cantidad fija ($24,872.50) y vigencia de 90 días, lo cual incumple con el término de 120 días solicitado.** Cabe señalar que, el 6 de marzo de 2026 (posterior al acto de apertura) el licitador envió comunicación alegando error de su *broker* y adjuntando una corrección. **Se hace constar que la oficina de subastas no solicitó dicha subsanación durante el Acto de Apertura**, remitiéndonos a la grabación oficial para cualquier verificación (Anejo 2, Se proveerá en la reunión de la Junta).

En cuanto a Tripoli, la Coordinadora expresó lo siguiente:

> Tripoli Construction, Corp.: Presentó propuesta económica y **fianza de licitación conforme. Se aclara que la fianza de licitación, presentada originalmente con sello digital/copia a color, fue debidamente validada y ratificada por la institución aseguradora** (Anejo 2, se proveerá en la reunión de la Junta). No obstante, **se identificó un incumplimiento administrativo con el requisito de entrega de la copia física (impresa)**, según estipulado en el pliego.
>
> (Énfasis nuestro).

La parte recurrente añadió que en la certificación se incluyó la siguiente nota:

> NOTA: Se deja a discreción de esta Honorable Junta determinar si los hallazgos señalados constituyen defectos de forma subsanables que no afectan la integridad de la oferta, la competencia, no (sic) los intereses de la Superintendencia, conforme a la facultad conferida por el reglamento vigente.

Finalmente, el 10 de abril de 2026, la Junta emitió *Acta de Determinación y Adjudicación para la Subasta SF-05-26*[9]. En esta, determinó, adjudicarle la *buena pro* a Tripoli por "ser el postor que, a juicio de la Junta representa la mejor alternativa y cumple sustancialmente con los términos y especificaciones"[10].

El día 14 de abril de 2026, el Presidente Interino suscribió *Memorando sobre Adjudicación de la Subasta*[11] en el que informó el resultado de la subasta en cuestión. El Presidente Interino explicó que, a pesar de recibirse ofertas nominalmente más bajas, estas

---

[9] Ap. 12, págs. 2-4.
[10] *Íd.,* pág. 1.
[11] Ap. 19.

fueron descalificadas por incumplimientos mandatorios (fianza de licitación insuficientes y omisión de partidas esenciales).

Así, el 24 de abril de 2026, la Junta emitió y notificó la *Notificación de Adjudicación de Subasta Formal*[12], objeto del presente recurso. En esta, la Junta detalló el análisis comparativo de ofertas como sigue:

| Licitador | Oferta Total | Estatus de Cumplimiento |
|---|---|---|
| **Tripoli Construction, Corp.** | **$548,000.00** | **Cumple sustancialmente** (Dispensa de forma aplicada) |
| L&O Construction, Inc. | $497,450.00 | No cumple (Bid Bond insuficiente) |
| Allied Contractors & Engineers, Corp. | $610,820.00 | Cumple sustancialmente |
| J & A Builders Group, Inc. | $1,153,492.00 | Cumple sustancialmente |
| JN Contractors, Inc. | $840,091.00 | Cumple sustancialmente |
| Lortor Group, Corp. | $599,822.00 | No eligible (Propuesta incomplete) |
| MFS Construction, LLC | N/A | Documento de "No Bid" |

La Junta, a la luz del Informe de Recomendación de la Oficina de Gestión de Proyectos (PMO), la certificación de la Oficina de Subastas y de conformidad con lo deliberado en la Minuta de la Reunión de la Junta del 11 de abril de 2026, fundamentó su decisión en lo siguiente:

1. **Dispensas Administrativas de Forma:** La Junta de Subastas, en el ejercicio de su faculta discrecional, acordó **dispensar de manera uniforme** ciertos defectos de forma identificados en las propuestas presentadas. Específicamente, se dispensó la omisión de la copia física requerida y la validación de sellos digitales en las fianzas de licitación[13], determinando que tales hallazgos no afectaban la integridad de las ofertas, la sana competencia ni los intereses financieros de la Superintendencia.

2. **Descalificación de L & O Construction:** No obstante, lo anterior, se determinó que la propuesta de L & O Construction **incurrió en un incumplimiento**

---

[12] Ap. 2.

[13] En la nota al calce en original núm. 1 de la *Notificación de Adjudicación de Subasta Formal: "Los sellos fueron validados por personal de la Oficina de Subastas de la Superintendencia del Capitolio."*

**sustancial y no subsanable al presentar una fianza de licitación** *(Bid Bond)* con una vigencia de solo 90 días, cuando el pliego exigía estrictamente un término mínimo de 120 días. **Al ser la fianza una garantía de cumplimiento de la oferta, su insuficiencia en términos o cuantía constituye un defecto de fondo que impide su dispensa, invalidando la oferta para fines de adjudicación.**

[...]

4. **Adjudicación a Tripoli Construction, Corp.:** Al ser el proponente que cumple con todos los requisitos técnicos y administrativos, y presentar la oferta más baja entre los licitadores cumplidores, la Junta selecciona su propuesta como la más beneficiosa para la superintendencia.

Inconforme, L&O acude ante nos y formula el siguiente señalamiento de error:

ERRÓ LA JUNTA DE SUBASTAS AL DESCALIFICAR LA PROPUESTA DE *L&O CONSTRUCTION* DETERMINANDO DE FORMA ARBITRARIA, CAPRICHOSA O IRRAZONABLE, QUE INCURRIÓ EN UN INCUMPLIMIENTO SUSTANCIAL Y NO SUBSANABLE AL PRESENTAR UNA FIANZA DE LICITACIÓN (BID BOND) CON UNA VIGENCIA INCORRECTA, LA CUAL FUE NOTIFICADA CORRECTAMENTE AL OTRO DÍA DE LA ENTREGA Y APERTURA DE LAS PROPUESTAS, EN DONDE LA MISMA FIANZA TENÍA FECHA ANTERIOR A LA FECHA DE PRESENTACIÓN DE LAS PROPUESTAS.

## II.    Derecho Aplicable

### A. El Procedimiento de Subasta

La contratación gubernamental de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado.[14]

La subasta tradicional y el requerimiento de propuestas (*Request for Proposal o* RFP) son métodos mediante los cuales, tanto el gobierno central, como el municipal, adquieren bienes y servicios.[15] A través de ambos mecanismos, se procura conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de

---

[14] *ECA Gen. Contract v. Mun. Mayagüez*, 200 DPR 665, 672 (2018), citando a *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009).

[15] *PR Eco Park et al. v. Mun. De Yauco,* 202 DPR 525 (2019); *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007).

incumplimiento".[16] En la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los postores.[17]

En vista de este fundamental principio y con el objetivo de concederle a los entes administrativos y municipios cierto grado de flexibilidad que les permita proteger sus intereses adecuadamente, nuestro ordenamiento jurídico les reconoce discreción, tanto para rechazar las ofertas recibidas, como para cancelar la subasta una vez adjudicada.[18]

Por otro lado, en nuestro ordenamiento no existe una disposición de ley que regule los procedimientos de subastas públicas para la adquisición de bienes y servicios.[19] Ante ello, corresponde a cada agencia ejercer su poder de reglamentación para establecer las normas que gobernarán sus procedimientos de subasta.[20]

A tenor con el mencionado principio, la Asamblea Legislativa de Puerto Rico promulgó el Reglamento de Subastas de la Superintendencia del Capitolio[21] "con el propósito de orientar las acciones de los miembros de la Junta de Subastas, funcionarios y personas que participan en el proceso de licitación y adjudicación de subastas para compras, arrendamiento, servicios y obras de construcción llevados a cabo en la Superintendencia".[22]

El Art. 2 del Capítulo 3 del Reglamento de Subastas, *supra*, establece los deberes y facultades de la Junta. En lo pertinente:

[…]

---

[16] *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009).

[17] *Íd.* Véase, además, *De Jesús González v. A.C.*, 148 DPR 255, 267-268 (1999).

[18] *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 248 (2008).

[19] *RBR Const., S.E. v. A.C.,* 149 DPR 836, 850 (1999); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 779-780 (2006).

[20] *Aut. Carreteras v. CD Builders, Inc.*, supra, pág. 404; *Super Asphalt v. AFI,* 206 DPR 803, 821 (2021); *ECA Gen. Contract v. Mun. Mayagüez*, supra, pág. 673.

[21] Reglamento de la Junta de subastas de la Superintendencia del Capitolio, R01-25-01, aprobado el 19 de marzo de 2025.

[22] Art. 1 del Reglamento.

2. Autorizar los avisos, pliegos, agenda de subastas, así como las notificaciones escritas de las decisiones de la Junta de Subastas, según revisadas por el Secretario.

3. Evaluar las propuestas y adjudicar subastas, de acuerdo con su jurisdicción y según requerido por este Reglamento.

4. Solicitar asesoramiento, consejo y cooperación de agencias, técnicos gubernamentales o profesionales, técnicos y especialistas privados, que crea conveniente para adjudicar cualquier subasta o asunto que haya sido sometido ante su consideración.

   […]

6. Adjudicar la buena Pro a favor del licitador más bajo en precio o al mejor postor cualificado, tomando en consideración los siguientes factores:

   a. La conformidad de las propuestas con todas las especificaciones y condiciones requeridas.

   b. Los términos de entrega.

   c. La habilidad del licitador para realizar y cumplir con el contrato; la responsabilidad económica del licitador.

   d. La reputación e integridad comercial y otras condiciones insertadas en el pliego de subasta.

7. **Autorizar las fianzas de licitación y de ejecución que se estimen necesarias, convenientes o útiles, las cuales se requerirán a los licitadores, además de cualesquiera otras garantías, condiciones y términos para el contrato de compra o arrendamiento**.

8. **Rechazar las propuestas que reciba como resultado de un aviso de subasta, cuando considere, entre otros, que:**

   […]

   d. Las propuestas no cumplen con las especificaciones, condiciones o requisitos del pliego de subasta.

   e. **Los licitadores no presenten las fianzas requeridas.**

   f. Cuando el interés público se beneficie con ello, sin que medie responsabilidad alguna por parte de la Superintendencia.

   […]

12. Reservarse el derecho de aceptar o rechazar cualquier o todas las propuestas y adjudicar las subastas bajo las condiciones más favorables a los intereses de la Superintendencia. Igualmente, podrá reservarse el derecho de cancelar la adjudicación en cualquier momento antes de la firma del contrato,

sin que medie responsabilidad alguna para la Superintendencia, siempre y cuando los mejores intereses de esta dependencia legislativa puedan afectarse.

[…][23]

En cuanto a las normas que rigen el proceso de subasta, el Artículo 3, incisos (F) y (G) del Capítulo 4 del Reglamento, disponen que cualquier error contenido en la propuesta será responsabilidad única y exclusiva del licitador, que no se aceptarán propuestas ni correcciones a las mismas una vez se haya dado comienzo a la apertura de la subasta y que el licitador que desee hacer alguna corrección deberá hacerlo antes de abrirse el primer pliego.

Con relación a la adjudicación de subastas, el Art. 1(D) del Capítulo 5 del Reglamento de Subastas, *supra*, establece que, la Junta de Subastas examinará la recomendación y las evaluaciones técnicas solicitadas y adjudicará la subasta, siguiendo los parámetros establecidos en el Reglamento. Además, la Junta de Subastas podrá rechazar la oferta más baja en precio cuando, entre otros, esta no cumpla con las especificaciones, requisitos y términos de la subasta, así como cualquier otra razón que no responda al mejor interés público[24].

**B. La fianza de licitación**

De otra parte, nuestro Tribunal Supremo ha reiterado que las agencias administrativas "se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración a la luz de los parámetros establecidos por la ley y los reglamentos aplicables".[25] Por tanto, los tribunales "no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta salvo que la determinación administrativa adolezca de abuso de discreción, arbitrariedad o irracionalidad".[26]

---

[23] Énfasis nuestro.
[24] Art. 1(F) del Capítulo 5 del Reglamento de Subastas.
[25] *Aut. Carreteras v. CD Builders, Inc.*, supra, pág. 408 (2009).
[26] *Íd.*

En ese sentido, en *Autoridad de Carreteras y Transportación v. CD Builders, Inc.,* 177 DPR 398 (2009), el Alto Foro resolvió que "permitir que un licitador subsane un defecto sustancial—como el no haber incluido una garantía de proposición aceptable conjuntamente con su propuesta—*luego de la apertura de los pliegos de licitación,* lesionaría el interés público de que los licitadores participen y sus propuestas sean consideradas en igualdad de condiciones"[27]. En dicho caso, el Tribunal Supremo destacó que "a pesar de que la Autoridad puede tener un interés en adjudicar la subasta a favor del licitador que presente la propuesta más ventajosa en términos económicos, éste no constituye un elemento que justifique sacrificar el principio de competencia equitativa entre los licitadores"[28]. Por lo anterior, el Tribunal Supremo concluyó que la omisión de LPCD de incluir la suma afianzada constituyó un defecto sustancial que impedía considerara el documento de fianza presentado como una garantía de proposición aceptable, por lo que procedía descalificar su propuesta.

Asimismo, el Alto Foro puntualizó que el presentar un nuevo documento de fianza para subsanar un defecto sustancial, además de ser contrario al reglamento de subastas, vulnera los principios fundamentales del proceso de pública subasta.[29]

Con el marco jurídico antes expuesto, estamos en posición de resolver.

### III. Aplicación del Derecho a los Hechos

L&O señala que la Junta erró al descalificar su propuesta al concluir que la presentación del *Bid Bond* con vigencia incorrecta constituyó un incumplimiento sustancial y no subsanable, por lo que su determinación fue arbitraria, caprichosa e irrazonable. Como

---

[27] *Aut. Carreteras v. CD Builders*, supra, págs. 413-414. Bastardillas nuestras.
[28] *Íd.*
[29] *Íd.*

apoyo de su argumento, la recurrente, plantea que el licitador agraciado, Tripoli, no incluyó el *Bid Bond* en original, y que en las condiciones generales del pliego de subasta se señala específicamente que la fianza tiene que presentarse en original con la oferta y que aquella oferta que se presente sin fianza de licitación será rechazada.[30] Añade que el Presidente Interino le solicitó a la aseguradora de Tripoli comprobar la validez y vigencia de la fianza, más no hizo lo mismo con la recurrente, por lo que incurrió en favoritismo por Tripoli. No le asiste la razón.

En primer lugar, el pliego de subasta expresamente establecía como requisito la prestación de una fianza de licitación (*Bid Bond)* mediante el cual todo licitador debía sostener y garantizar sus precios por un periodo de tiempo no menor a ciento veinte (120) días a partir de que presentara su oferta. Además, el propio Reglamento de Subasta establece que el licitador que desee hacer alguna corrección deberá hacerlo antes de abrirse el primer pliego. De igual modo, el Reglamento dispone que cualquier error contenido en la propuesta será responsabilidad única y exclusiva del licitador, por lo que la alegación de la recurrente de que el error en la fianza presentada se debió a un error de su *broker,* no es causa suficiente para que este, por su propia iniciativa, presentara una fianza corregida con posterioridad al acto de apertura.

En segundo lugar, el término de vigencia del *Bid Bond* de la parte recurrente, constituye un elemento esencial de la garantía, por lo que el defecto en cuanto a su término de vigencia constituye un defecto de fondo insubsanable, por lo que procedía su descalificación. Por consiguiente, un *Bid Bond* con vigencia de 90 días, cuando el pliego requería 120 días, no garantizaba la oferta de L&O durante los 30 días adicionales que la Junta necesitaba para

---

[30] Ap. 3, pág. 19, Fianzas y Seguros.

evaluar y adjudicar la subasta. Por otro lado, y conforme resolvió el Alto Foro en *Aut. de Carreteras v. CD Builders,* supra, "no procede descansar en un acto posterior a la apertura—como presentar un nuevo documento de fianza—para subsanar un defecto que requería inicialmente la descalificación de la propuesta."[31]

Por último, en cuanto al planteamiento de que la Junta brindó favoritismo al no descalificar a Tripoli por no haber presentado el *Bid Bond* en original, no nos persuade su argumento. En las instrucciones generales del pliego de subasta, se le reconoce a la Superintendencia del Capitolio y a la Junta de Subastas que estas se reservan el derecho de solicitar documentación o información adicional en cualquier etapa del proceso a los fines de corroborar la veracidad de la información provista por el licitador y con el fin de obtener el mejor interés público[32]. En virtud de lo anterior, la actuación de la Junta de validar aquellas fianzas que se presentaron en copia digital se encuentra dentro de sus facultades para corroborar la veracidad de la información que tiene ante sí para guiar su decisión en obtener el mejor interés público. Por ende, no se cometió el error señalado, y procede confirmar la determinación recurrida.

### IV.  Parte dispositivas

Por los fundamentos que anteceden, confirmamos la determinación recurrida.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[31] *Aut. Carreteras v. CD Builders*, supra, a las págs 412-413, citando *Accumail de Puerto Rico v. Junta de Subastas*, 170 DPR 821 (2007).
[32] Véase, Pliego de Subasta, Parte I-Instrucciones Generales, Subsección 18, Inciso H.